## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **LINDY RAY MATTHEWS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **3:05-CV-1408-L** |
| | § | |
| **WARDEN L.E. FLEMING, et al.,** | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the court filed on June 22, 2009, this case has been referred to the United States Magistrate Judge for pre-trial management.  The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case:  This is a civil rights action brought by a former federal prisoner pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

Parties:  During the events at issue in this case, Plaintiff Lindy Ray Matthews ("Matthews") was a federal prisoner confined at the Federal Medical Center (FMC) in Fort Worth, Texas.  *USA v. Matthews*, 4:02cr0005(01) (N.D. Tex., Fort Worth Div.).  Following his plea of not guilty, a jury convicted Matthews of mail fraud, and on November 13, 2003, the district court sentenced him to sixty-month imprisonment.  *Id.*  The Fifth Circuit affirmed his conviction.  *United States v. Matthews*, No. 03-11206 (5th Cir. Oct. 20, 2004), *cert. denied*, No. 04-8654 (Mar. 28, 2005).

During the pendency of his direct appeal, Matthews was transferred to the Federal Correctional Institution (FCI) in Seagoville, Texas.  Shortly before the filing of this action, and after completing his federal sentence, Plaintiff was transferred to state custody to serve a state parole violation.  (Orig. Compl. at 2).  In late 2005, he was released from state custody and presently resides in Cypress, Texas.

The defendants remaining in this case are five FMC Fort Worth employees –  former Warden L. E. Fleming, former Health Services Administrator Paul Celestin, Clinical Director Dr. John Mills, and Physician Assistant Jose Gomez –  and one employee of FCI Seagoville – Clinical Director Dr. J. Capps.

Statement of the Case:  Prior to issuing process, the court dismissed all claims except for the ones relating to the post-July 2003 alleged denial of proper medical treatment stemming from Plaintiff's pre-existing shoulder injuries while he was confined at FMC Fort Worth (from July 8, 2003, to February 5, 2004) and at FCI Seagoville (from February 5, 2004, to April 29, 2005).[1]

With respect to the above claims, Plaintiff alleged that Defendants ignored his repeated complaints that he had torn rotator cuffs in both of his shoulders and declined to approve an orthopedic surgeon's recommendation for surgery after an MRI confirmed rotator cuff tears in both shoulders.  He sought compensatory and punitive damages.

---

[1]    *See* Feb. 28, 2006 Order Accepting Findings, Conclusions and Recommendation and Judgment (Doc. #17 and #18), affirmed in part and reversed in part, No. 06-10451 (5th Cir. Jun 25, 2008) (affirming dismissal of pre-July 2003 claim and reversing *sua sponte* dismissal of post-July 2003 claims for failure to exhaust unexhausted claims in light of intervening Supreme Court opinion); Jun. 18, 2009 Order Accepting Findings, Conclusion and Recommendation, which dismissed all claims except for medical treatment claim stemming from shoulder injuries and issued process as to the five remaining defendants (Doc. #35).
From February 20 to June 3, 2004, Plaintiff was incarcerated at other Bureau of Prison locations, not at issue in this case.

On November 5, 2009, Defendants filed a motion for summary judgment claiming they were entitled to the defense of qualified immunity.  Plaintiff responded.  Defendants then filed a reply, to which Plaintiff submitted a sur-reply.

<u>Findings and Conclusions</u>: For the reasons set out below, Defendants' motion for summary judgment should be granted.

I.

To prevail on a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986).  Once the moving party has made an initial showing, the party opposing the motion for summary judgment may not merely rely on his pleadings, but must come forward with competent evidentiary materials that establish a genuine fact issue.  *Anderson,* 477 U.S. at 256-257, 106 S. Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986).

The doctrine of qualified immunity, shields officials from suit "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *McClendon v. City of Columbia,* 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  The qualified immunity analysis is identical under either *Bivens* or 42 U.S.C. § 1983.  *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692 (1999) (recognizing that the analysis is the same); *Melear v. Spears*, 862 F.2d 1177, 1182 n. 5 (5th Cir. 1989) (same).

To determine whether an official is entitled to qualified immunity from a suit alleging a

3

constitutional violation, the court conducts a familiar two-step inquiry:  First the court

determines whether plaintiff's allegations allege facts to establish that the official violated the

plaintiff's constitutional rights; second, the court must decided if the right at issue was "clearly

established" at the time of defendant's alleged misconduct.   *Hope v. Pelzer,* 536 U.S. 730, 736,

122 S. Ct. 2508, 2513 (2002); *see McClendon,* 305 F.3d at 323.  Courts may "exercise their

sound discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of circumstances in the particular case at hand."  *Pearson v. Callahan*,

___ U.S. ___, 129 S.Ct. 808, 818 (2009), receding from *Saucier v. Katz*, 533 U.S, 194, 121 S. Ct.

2151 (2001).

To state a colorable claim under the Eighth Amendment for denial of medical care,

convicted inmates must allege acts or omissions "sufficiently harmful to evidence a deliberate

indifference to serious medical needs."[2]  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292

(1976); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Norton v. Dimazana*, 122 F.3d

286, 291 (5th Cir. 1997).  The burden of demonstrating deliberate indifference to a serious

medical need by correctional officials and healthcare providers is "an extremely high standard to

meet."  *Domino v. Tex. Dept' of Criminal Justice*, 239 F.3d 752, 765 (2001).  A prison official

acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of

serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to

abate it."  *Gobert*, 463 F.3d at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct.

1970 (1994)).  As the Fifth Circuit noted in *Domino*,

> an incorrect diagnosis by prison medical personnel does not suffice to state a
> claim for deliberate indifference.  *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th

---

[2]       The same standard applies to the period in which Plaintiff was a pre-trial detainee.

4

Cir.1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107, 97 S.Ct. 285. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970.

239 F.3d at 756.

## II.

Plaintiff cannot establish that the Defendants were deliberately indifferent to serious medical needs. Plaintiff, who was in his late fifties, suffered from pre-existing, chronic shoulder injuries – torn rotator cuffs in both of his shoulders – and degenerative joint conditions, which caused him discomfort and pain. While Plaintiff makes various claims regarding the need for surgery to correct his shoulders condition, he fails to offer adequate support from his medical records. He refers to a January 14, 2003 recommendation of an orthopedic consultant that he undergo surgery repair of the right rotator cuff. (Pl.'s Resp. at Exh. 6). Yet the record makes clear that the recommended surgery was not medically necessary despite the documented tears of the rotator cuff. Plaintiff had a good range of motion, was capable of performing activities of daily living, and routinely received over-the counter medications to control his discomfort and pain. Plaintiff also received instructions on physical therapy that he performed on his own. In addition, on July 8, 2003, the BOP Medical Review Board concluded that surgical repair of the right rotator cuff was elective and not medically necessary. (Defs.' App. at 57).

Plaintiff's chronic condition did not change throughout his confinement at FCI Fort Worth. On December 17, 2003, Dr. Mills reviewed an MRI of Plaintiff's right shoulder, ordered the previous month, and concluded that "the condition of the right shoulder was essentially

5

unchanged." (Dr. Mills' Aff., Defs' App. at 54). He reiterated that Plaintiff suffered from "a degenerative joint condition in his right shoulder which [was] chronic and appropriately managed with medication and physical therapy." (*Id.*).

Dr. Capps reached the same conclusion while Plaintiff was confined at FCI Seagoville. After examining him in October 2004 and reviewing the 2003 MRIs and x-rays of his shoulders, Dr. Capps continued Plaintiff's pain medication for the "degenerative joint disorder," classified him as "medically unassigned," and requested an orthopedic consultation (non-urgent). (Dr. Capps' Aff., Defs' App. at 117-18). Dr. Capps did not feel it was medically justified to order an expedited orthopedic consultation. (*Id.* at 119).

While Plaintiff undoubtedly experienced pain associated with tears to the rotator cuffs in both shoulders and the degenerative joint conditions, given his age while confined in federal custody, Drs. Mills and Capps concluded in their professional judgments that the condition was appropriately managed with physical therapy and pain medication. It is clear that Plaintiff did not agree with the treatment regimen of the defendant doctors, and that his subjective lay opinion, without more, is insufficient to permit a reasonable jury to find that these defendants were deliberately indifferent to serious medical needs. *See Stewart v. Murphy,* 174 F.3d 530, 535 (5th Cir. 1999). Disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are insufficient to support a deliberate indifference claim. *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Likewise, questions of medical judgment are not subject to judicial review. *See Estelle,* 429 U.S. at 107, 97 S. Ct. 285 (whether to provide additional treatment "is a classic example of a matter for medical judgment," which amount at most to medical malpractice cognizable only under state law); *Parham v. Johnson,* 126 F.3d 454, 458 (3rd Cir. 1997)

6

(quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (courts will "'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.'").

Plaintiff urges that the refusal to provide the much needed surgery caused him "permanent life altering damage to both of his shoulders," and caused him "to suffer needless undue wanton severe pain for over five years." (Pl.'s Reply (Docket #7) at 2 ). He also urges that prescribing over-the-counter pain medications was "an ineffective treatment" because it would not correct the permanent damage to his shoulders. (*Id.* at 7-8). These unsupported, conclusory assertions are not competent summary judgment evidence. *Gobert,* 463 F.3d at 346 n. 23 (cited case omitted) (unsubstantiated assertions are not competent summary judgment evidence sufficient to defeat a properly supported motion). Moreover, Plaintiff has not produced any competent expert testimony to show that any delay in performing surgery caused any permanent injury or that other superior palliative measure existed which the defendants deliberately withheld.

Even when liberally construed, Plaintiff's claims amount to an argument that he did not receive the medical attention and treatment he deemed appropriate, a claim that is insufficient as a matter of law to sustain a cause of action based on deliberate indifference. *Gobert*, 463 F.3d at 346 (absent exceptional circumstances, a prisoner's disagreement with his medical treatment is not actionable under § 1983). It is undisputed, that prisoners are not entitled to unqualified access to health care, namely the "best medical care money can buy." *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir.1992); *Woodall v. Foti*, 648 F.2d 268 (5th Cir.1981). In *Woodall*, the Fifth Circuit stated that the test in balancing the needs of the prisoner versus the needs of the detention center "is one of medical necessity and not one simply of desirability." 648 F.2d at 272. *Accord*

*Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977).

Plaintiff may not have received all the treatment that he desired and as quickly as he wanted it for his chronic shoulder condition.  Nevertheless, the summary judgment evidence shows that he was not ignored and that he was actively treated and given pain medication throughout his incarceration.  Viewing the evidence in the light most favorable to the Plaintiff, the record contains no evidence upon which a reasonable trier of fact could find that Defendants were deliberately indifferent to Plaintiff's chronic shoulder condition – namely that they knew that Plaintiff faced a substantial risk of serious bodily harm, and that they disregarded that risk by failing to take reasonable measures to abate it.  Accordingly, Defendants are entitled to judgment as a matter of law on the basis of qualified immunity.

RECOMMENDATION:

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment (Docket # 51) be GRANTED.

Signed this 2nd day of February, 2010.

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.